UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

REBECCA GREENHALGH, )
 )
        Plaintiff, )
 )
        v. ) No. 4:15 CV 1802 DDN
 )
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
 )
        Defendant. )

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Rebecca Greenhalgh for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Administrative Law Judge (ALJ) is reversed and remanded.

## I. BACKGROUND

Plaintiff was born in 1984 and was 28 years old at the time of her first hearing. (Tr. 38, 303). She protectively filed her application on May 30, 2011, ultimately alleging a May 30, 2011 onset date of disability due to "polycythemia vera, degenerative disk disease in back and neck, narrowing of spinal canal, diabetes, depression, anxiety disorder, panic attacks, COPD, sleep apnea, [and] methylenetetrahydrofolate reductase (blood disorder)." (Tr. 331, 338). Her application was denied in August 2011, and she requested a hearing before an ALJ. (Tr. 73, 81-82). The first hearing was held in October 2012. (Tr. 38-63).

In November 2012, following this hearing, the ALJ issued a decision, concluding that plaintiff was not disabled under the Act. (Tr. 140-54). The Appeals Council reviewed this decision and remanded it for failing to adequately evaluate certain medical opinions and account for certain impairments, and to allow the ALJ to consider newly submitted evidence. (Tr. 160-63). After two additional hearings, held in August 2013 and February 2014, the ALJ issued a second decision on April 24, 2014, again concluding that plaintiff was not disabled under the Act. (Tr. 8-29, 64, 101). The Appeals Council denied plaintiff's second request for review. (Tr. 1-7). Thus, the April 2014 decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL AND OTHER HISTORY[1]

On July 7, 2010, plaintiff saw Dr. Thomas Spencer, Psy.D., for a psychological evaluation. (Tr. 1131-35). She reported that she was depressed most of the time, isolated from friends and family, snapped at those around her, thought about suicide, and had panic attacks. (Tr. 1132). Dr. Spencer noted her affect was bland, but noted no obvious grooming or hygiene impairments, physical distress, or abnormal motor behavior. (Tr. 1133). He opined that her insight, judgment, and flow of thought were intact. He diagnosed her with major depressive disorder, panic disorder, and borderline personality traits, assigning her a GAF score of 60-65. (Tr. 1135).

On January 14, 2011, plaintiff established care with Dr. Tawnyia Jerome, M.D., at Capital Region Medical Clinic and reported no anxiety or irritability. (Tr. 500-503). She was observed to have appropriate mood and affect, normal speech, and good eye contact, and she was cooperative and interacted appropriately. (Tr. 503). At a January 24, 2011 appointment, Dr. Jerome made the same observations, and plaintiff again reported that she was not experiencing anxiety or irritability. (Tr. 494-98).

---

[1] The sole basis of this appeal is the ALJ's evaluation of plaintiff's mental condition. Because plaintiff does not challenge the ALJ's evaluation of her physical impairments, the court will limit its discussion to the issues raised by plaintiff.

On February 14 and 22, 2011, plaintiff reported anxiety and depression, among other physical ailments, to Indumathi Baskar, M.D., of Jefferson City Medical Group. (Tr. 537-539). She was referred to a psychiatrist for her anxiety. (Tr. 538). On April 4, 2011, plaintiff went to Pathways Community Behavioral Health for a psychological examination. (Tr. 735). She reported a long history of depression, anxiety, personality disorder, and paranoia, and that the symptoms were worsening. *Id.* She reported limited social interaction because of her paranoia and not wanting to leave her house. *Id.* Wayne Brown, M.S., provisionally diagnosed plaintiff with schizoaffective disorder, bipolar type, and assessed a GAF score of 48. *Id.*

On May 23, 2011, plaintiff returned to Pathways and reported her issues were not so much with isolation, but more with irritability when interacting with other people. (Tr. 737). She agreed to receive counseling on Mondays, because on Mondays she played darts with her husband after he got out of work. She was next seen on July 29, 2011, when she reported she was depressed and irritable because she might have leukemia. (Tr. 779). She reported she wanted to hurt people when her hormones got high. *Id.* However, as of August 25, 2011, plaintiff was discharged from the Pathways program because she did not meet with her caseworker on a consistent basis, and she did not consistently take her medications. (Tr. 777-78).

On July 21, 2011, plaintiff met with Krishna Mettu, M.D., for problems related to her sleep apnea. (Tr. 868-72). Dr. Mettu observed that plaintiff was alert, cooperative, able to follow multi-step commands, able to give details of past medical history, and able to recall remote events. (Tr. 870). Dr. Mettu noted that plaintiff had normal attention and concentration, that her mood and affect seemed appropriate, and that her judgment and insight were intact. *Id.*

On July 18, 2011, Paula Kresser, Ph.D., reviewed plaintiff's file and completed a Mental RFC assessment for a state disability determination service (DDS) evaluation. (Tr. 759-73). Dr. Kresser noted that the reported severity of plaintiff's limitations was inconsistent with her behavior, activities, and observations. (Tr. 769). She further noted

that plaintiff's complaints and her visits to professionals were inconsistent. *Id.* Notwithstanding these inconsistencies, Dr. Kresser opined that the file substantiated the presence of major depressive disorder, panic disorder, borderline personality disorder, and avoidant personality disorder. (Tr. 762- 64). She opined that these impairments caused moderate limitations in plaintiff's activities of daily living and ability to maintain social functioning, concentration, persistence, or pace. (Tr. 767).

Specifically, in her Mental RFC assessment, Dr. Kresser opined that plaintiff had moderate limitations in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workweek without interruptions from psychologically-based symptoms; set realistic goals or make plans independently of others; respond appropriately to changes in the work setting; and interact appropriately with the general public. *Id.* Dr. Kresser opined that plaintiff was not significantly limited in all other areas. (Tr. 771-73). She concluded that plaintiff retained the ability to engage in simple one or two-step tasks under ordinary supervision, as long as her duties were routine and did not involve adaptation to change. (Tr. 773). She opined that plaintiff would perform best in a setting with minimal or superficial contact with others due to her personality traits. *Id.*

On October 17, 2011, plaintiff visited a licensed psychologist, Paul Rexroat, Ph.D., for a psychological consultative examination. (Tr. 1137-40). Plaintiff reported concentration deficits, hearing the voice of her dead mother, mood swings around crowds, and occasional suicidal ideation. *Id.* Dr. Rexroat observed plaintiff's noticeable body odor and flat affect, but noted that she exhibited good social skills in his office and that she said she usually gets along with people if she has to be around them. *Id.* He observed that plaintiff was not suspicious, anxious, tense, or weepy during the examination. *Id.* Dr. Rexroat noted that plaintiff was able to understand and remember simple instructions and sustain concentration, persistence, and pace with simple tasks, though she was functioning

below the average range of intelligence. (Tr. 1139-40). He diagnosed plaintiff with major depressive disorder and panic disorder with agoraphobia. (Tr. 1140). He assessed her GAF at 61. *Id.*

Plaintiff met with Dr. Syed Huq of the Rolla Mercy Clinic on August 10, 2012, for physical complaints. (Tr. 1088-93). Dr. Huq noted that plaintiff had normal mood and affect and that she appeared to possess good judgment and insight. (Tr. 1092).

On May 15, 2013, plaintiff visited the Mercy Clinic again and was observed by Korshie Dumor, M.D., to have no confusion or decreased concentration. (Tr. 1322). Her behavior was normal, and she had a normal mood and affect. *Id.*

Between May and December 2013, plaintiff saw Narismha Muddasani, M.D., of the Sullivan Specialty Clinic, for her anxiety and fear of storms. (Tr. 1284, 92). In May, Dr. Muddasani diagnosed plaintiff with bipolar disorder and depression. (Tr. 1293). She noted that plaintiff was seeking multiple pain medications. (Tr. 1292-93). Plaintiff returned to Dr. Muddasani in June, August, September, and December. In September, Dr. Muddasani noted plaintiff was doing a little better. (Tr. 1284-91). The next day, plaintiff met with Youssef Assioun, M.D., of the PCRMC Medical Group, and reported, among other things, anxiety, and depression. (Tr. 1356). Dr. Assioun observed that plaintiff had an appropriate affect and answered questions appropriately. *Id.* In December 2013, plaintiff returned to Dr. Muddasani, who observed that plaintiff had intact insight and judgment, though she was depressed. (Tr. 1324-26).

**ALJ Hearings**

On October 4, 2012, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 38-63). She has had a mental impairment "since at least 10, 11 years old," but she has not been on medication and has only had sporadic treatment. (Tr. 53). At her second ALJ hearing a year and a half later, on February 24, 2014, plaintiff appeared and testified to the following. (Tr. 69-101). Plaintiff's mental health was "not

good" and had "gotten worse." (Tr. 85). She was seeing a psychiatrist, Dr. Metacinie,[2] and had been seeing him for between six and twelve months. *Id.* She was not receiving any type of therapy or counseling, but her psychiatrist had prescribed and was managing her medication. (Tr. 89). Her medication had improved her interactions with people – that is, where she was no longer "blowing up at people" – but otherwise it was not helping her as much as she would like it to. (Tr. 87).

Her depression had worsened since the last hearing, to the point where she wouldn't leave the house for an errand like shopping, but would only go out for something like a doctor's appointment. *Id.* This is because she doesn't want to be around people, gets stressed out, and doesn't like to drive anywhere. (Tr. 86). She stays in bed most of the day three to four times a week. *Id.* Even while on medication, she still experiences mood swings ("I'll go from happy to extremely sad within seconds"), irritability, and avoidant behaviors. (Tr. 88). She calls family members to do her shopping for her so she can avoid dealing with the people at the grocery store, who make her irritated and anxious. (Tr. 88-89). When plaintiff has anxiety, she wants to be left alone, and she gets short of breath, shaky, and irritable. (Tr. 89). Storms and tractor trailers also make plaintiff feel anxious. (Tr. 90).

Plaintiff only occasionally cleans the house and does not cook. *Id.* She does her laundry only if she is out of clothes. *Id.* She spends the majority of her time either laying down or sitting in a chair with her feet propped up. *Id.* Her past work experience includes cafeteria attendant, sandwich maker, laundry folder, and cashier. (Tr. 91-96).

At the hearing, Robin Cook, a vocational expert (VE), was asked to assume a hypothetical individual with the same age, education and vocational background as plaintiff. (Tr. 91-97). The individual was functionally limited to light exertional work and should avoid ropes, ladders, scaffolding, and hazardous heights. (Tr. 96). She should also avoid constant exposure to fumes, odors, dusts and gasses. *Id.* The individual could

---

[2] The name "Metacinie" in the hearing transcript appears to be a phonetic transcription of the name "Muddasani." (Tr. 85, 1325).

frequently do pushing and pulling with her upper extremities but was limited to unskilled work. *Id.* The VE testified that plaintiff could perform her past relevant work as a cashier and could also perform other work that exists in the national economy, including office helper, tanning salon attendant, and recreational aide. *Id.*

Plaintiff's attorney asked the VE to assume a second hypothetical with the same characteristics as the first but with additional limitations. The individual would be limited to occasional contact with coworkers and supervisors, no teamwork type activities, and no contact with the general public. (Tr. 97). The VE testified that such an individual could still work as an office helper. *Id.* Under a third hypothetical, plaintiff's counsel asked the VE to assume the ALJ's basic hypothetical with the added limitation of no contact with the general public and only occasional contact with coworkers and supervisors. (Tr. 100). The individual would be further limited in having to alternate between sitting and standing every 30 minutes and would need to have the option to use a cane as an assistive device whenever standing or walking. *Id.* The VE testified that this hypothetical would eliminate any jobs in the competitive market. *Id.*

### III.   DECISION OF THE ALJ

On April 24, 2014, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 11-29). At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since her May 30, 2011 alleged onset date and application date. (Tr. 14). At Step Two, the ALJ found that plaintiff had the severe impairments of asthma/chronic obstructive pulmonary disease; a cervical and lumbar spinal impairment; diabetes and related polyneuropathy; right carpal tunnel syndrome requiring release surgery; obesity; seizure disorder; sleep apnea; and schizoid disorder, bipolar type. *Id.* At Step Three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.*

At Step Four, the ALJ found that plaintiff had the RFC to lift 20 pounds occasionally and 10 pounds frequently, walk or stand six hours out of an eight-hour work day, sit six hours out of an eight-hour work day, and frequently push and pull using her arms. She must avoid climbing ropes, ladders, and scaffolds and must avoid constant exposure to fumes, odors, dust, gases, and the hazards of heights. Finally, she is able to understand, remember, and carry out at least simple instructions and non-detailed tasks. (Tr. 16).

Based on this RFC and the VE's testimony, the ALJ concluded at Step Five that plaintiff was able to perform her past relevant work, as well as jobs in significant numbers in the national economy. (Tr. 27-29). Therefore, the ALJ found that plaintiff was not disabled within the meaning of the Act. *Id.*

The ALJ noted that a GAF score of 60 to 70, which plaintiff was assigned in at least two opinions, indicates mild symptoms or some difficulty in social or occupational functioning, which the ALJ found to be consistent with the RFC adopted in the decision. (Tr. 25). The ALJ held that this score exceeds the symptom severity that plaintiff testified she experiences. *Id.* The ALJ noted that Dr. Kresser's opinion found moderate limitations to plaintiff's activities of daily living, social functioning, concentration, persistence, and pace. (Tr. 26). But the ALJ only gave limited weight to Dr. Kresser's opinion, "because it is followed by two and a half years of additional records of mental health treatment that is not entirely consistent with the opinion by Dr. Kresser." (Tr. 26). The ALJ noted that while some opinions assessed plaintiff with a GAF below 60, the record did not indicate she suffered significant mental health symptoms. (Tr. 25). She went out to play darts with her husband, did not receive consistent counseling for her mental impairments, did not consistently take medications to alleviate the alleged mental health symptoms, often reported a lack of anxiety or irritability, and was observed to interact appropriately with multiple individuals. (Tr. 25-26). The ALJ noted multiple instances in the record where plaintiff was able to follow instructions and had normal mood and affect. *Id.*

Because of plaintiff's sporadic treatment, non-compliance, and inconsistencies, the ALJ found that "the claimant herself does not find her impairments as severe and disabling as to require continuing the treatment and medication prescribed for her." (Tr. 27). The ALJ found that there was a disparity between plaintiff's allegations and the objective results in her medical records. Ultimately, the ALJ found that plaintiff's statements and testimony concerning the intensity, persistence, and limiting effects of her mental impairments were only of a limited credibility and were only supported to the extent expressed in the decision's RFC.

## V. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue,* 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to SSI benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 1382c(a)(3)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20

C.F.R. § 416.920(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process); *Pate-Fires*, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment. 20 C.F.R. § 416.920(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). *Id.* § 416.920(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 416.920(a)(4)(v).

## V. DISCUSSION

Plaintiff argues the ALJ erred in failing to base plaintiff's mental RFC on substantial evidence.[3] Specifically, she argues that the ALJ failed to include sufficient limitations in concentration, persistence, or pace in formulating the RFC. She contends that the ALJ failed to provide sufficient reasons for giving little weight to Dr. Kresser's opinion, arguing that the fact that an opinion is "outdated" would invalidate all preceding opinions upon which the ALJ relied. She also requests remand in order to more fully and fairly develop the record.

The court agrees that the final decision is not supported by substantial evidence.

---

[3]Although plaintiff applied for disability based upon both mental and physical impairments, her appeal focuses exclusively on mental impairments. Therefore, plaintiff does not contest the ALJ's determinations that her physical impairments were not disabling or that her claims were not entirely credible.

**Limitations in Concentration, Persistence, or Pace in the RFC**

Plaintiff first argues that the decision's RFC is unsupported because it does not adequately address her mental impairments in maintaining concentration, persistence, or pace. The court disagrees. Plaintiff relies on Dr. Kresser's opinion and her own testimony to make this argument.

The ALJ must generally resolve conflicts among the opinions of various treating and examining physicians. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012); 20 C.F.R. § 416.927(d)(2). In this case, the ALJ resolved the conflicting evidence to find that plaintiff is able to understand, remember, and carry out simple instructions and non-detailed tasks, limiting her RFC accordingly. (Tr. 16). This determination is supported by substantial evidence.

After reviewing plaintiff's medical record in July 2011, Dr. Kresser believed that plaintiff has moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 767). In addition to Dr. Kresser's opinion, plaintiff stated in her June 2011 function report that she has poor concentration and memory, that she can only pay attention for five to ten minutes at a time, and that normally things have to be repeated five to ten times before she can understand them. (Tr. 370-80).

However, in October 2011, Dr. Rexroat opined that plaintiff was able to understand and remember simple instructions and sustain concentration, persistence, and pace with simple tasks. (Tr. 1139-40). In addition to Dr. Rexroat's opinion, several treating practitioners observed a less severe symptomology than that alleged by plaintiff. In July 2010, Dr. Spencer observed that plaintiff's flow of thought was intact and relevant. (Tr. 1133). In January 2011, plaintiff was able to give Dr. Jerome details of her past medical history for over twenty minutes. (Tr. 500-03). Dr. Jerome did not note any deficiencies in plaintiff's ability to relate this information. (Tr. 503). On the contrary, she noted that plaintiff interacted appropriately throughout the appointment. (Tr. 503). In July 2011, Dr. Mettu observed that plaintiff could follow multi-step instructions and had normal attention and concentration. (Tr. 870). Plaintiff was able to give Dr. Mettu details of her past

medical history and she was able to recall remote events. *Id.* In May 2013, Dr. Dumor observed plaintiff to have no confusion or decreased concentration. (Tr. 1322). In September 2013, Dr. Muddasani noted that plaintiff had an intact thought process and Dr. Assioun observed that plaintiff answered questions appropriately. (Tr. 1284-91, 1356). The ALJ also personally observed plaintiff during her hearing and found that she "was able to follow the proceedings . . . without observable concentration, persistence, and pace deficits." (Tr. 15). The more consistent an opinion is with the record as a whole, the more weight is given to that opinion. *See* 20 C.F.R. § 404.1527(c)(4).

Additionally, the more severe limitations urged by plaintiff are not themselves supported by substantial evidence. Plaintiff relies on Dr. Paula Kresser's opinion, but Dr. Kresser did not examine or treat plaintiff; she only reviewed plaintiff's medical record. "The opinions of non-treating practitioners who have evaluated the plaintiff without examination," relying on the records of the treating sources to form an opinion of the plaintiff's RFC, "do not constitute substantial evidence." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). The ALJ only gave Dr. Kresser's opinion limited weight. (Tr. 26). This was not because it was outdated, as plaintiff suggests, but because it was followed by two and a half years of additional records that were inconsistent with Dr. Kresser's opinion. *Id.*

Furthermore, while a plaintiff's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). The ALJ pointed to several gaps in plaintiff's treatment and medication with no reported limitations to her activities of daily living as a consequence. (Tr. 14-15). An ALJ may properly consider a pattern of conservative medical treatment in evaluating a claimant's credibility. *See Gowell v. Apfel*, 242, F.3d 793, 796 (8th Cir. 2001). Plaintiff alleges that she has suffered from her mental impairments since childhood. (Tr. 53, 85). Yet plaintiff testified that she was not on any medication or receiving any treatment for these ailments from at least 2009 until 2011.

(Tr. 76). She was able to complete high school in 2002 and performed several jobs prior to filing for benefits. (Tr. 15). Her past work experience includes cafeteria attendant, sandwich maker, laundry folder, and cashier. (Tr. 91-96). An ALJ can properly consider that a plaintiff successfully performed employment with her current cognitive abilities. *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).

The ALJ emphasized that plaintiff has had only sporadic treatment for her mental impairments, her medications are prescribed by a primary care physician and not a mental health practitioner, she has not maintained either pharmaceutical or therapeutic treatment, and she has often been noncompliant and untruthful with her physicians. (Tr. 27, 89). Upon consideration of the record as a whole, the ALJ found that plaintiff's mental impairments could reasonably be expected to cause some of her alleged symptoms, but that plaintiff's statements and testimony concerning the intensity, persistence, and limiting effects of those symptoms were only of a limited credibility. *Id.* The ALJ found that plaintiff's statements were only supported to the extent expressed in the RFC, that is, that plaintiff had the RFC to "understand, remember, and carry out at least simple instructions and non-detailed tasks." (Tr. 16). This finding is supported by substantial evidence in the record as a whole.

**Limitations in Concentration, Persistence, or Pace in the VE Testimony**

However, while the ALJ's mental RFC as stated in the decision is supported by substantial evidence, the ALJ failed to include any specific limitations related to concentration, persistence, or pace in obtaining expert testimony from the VE. The ALJ only specified that plaintiff's work must be "unskilled." (Tr. 96). In light of plaintiff's RFC and controlling case law, this was error.

During the hearing, the ALJ asked the VE whether plaintiff could perform any of her past work when she is functionally limited to light exertional work; should avoid ropes, ladders, scaffolding, and hazardous heights; should avoid constant exposure to fumes, odors, dusts, and gasses; can frequently do pushing and pulling with her upper

extremities; and is limited to unskilled work. (Tr. 96). The ALJ also asked if there were any other jobs that a hypothetical individual with the same education, vocation background, and RFC as the claimant could perform that exist in significant numbers on the regional and national level. *Id.* The VE testified that of plaintiff's past employment, she could still work as a cashier with these described limitations, and there were a number of other jobs available in the regional and national markets for someone with those described limitations. (Tr. 96-97).

"A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996) (citing *Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994)). In *Newton*, the plaintiff suffered from deficiencies of concentration, persistence, or pace, but the ALJ failed to include these deficiencies in the hypothetical posed to the VE. *Newton*, 92 F.3d at 695. The Eighth Circuit found that the hypothetical, which indicated the hypothetical individual could perform "simple jobs," failed to include the deficiencies of concentration, persistence, or pace, and therefore, the matter had to be remanded. *Id.*

While an ALJ need only include in hypothetical questions those impairments and limitations the ALJ finds substantially supported by the record as a whole, the ALJ limited plaintiff's RFC to the ability to understand, remember, and carry out at least simple instructions and non-detailed tasks. *See Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). Similar to *Newton*, however, the ALJ's questions in this case only limited plaintiff to "unskilled" work. (Tr. 96). The ALJ failed to address any concentration, persistence, or pace limitations in the hypothetical posed to the VE. Because the VE's testimony was based upon a deficient hypothetical, it cannot constitute substantial evidence to support the Commissioner's decision that plaintiff could perform past relevant work and other work. *See Newton*, 92 F.3d at 695. The ALJ relied exclusively on this VE testimony in the conclusion that plaintiff could perform past or other work; so, this error was not harmless. *Cf. Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007).

**Development of the Record**

Plaintiff argues that the opinions upon which the ALJ relied in formulating plaintiff's mental RFC – primarily Dr. Spencer's and Dr. Rexroat's – are outdated, and the Commissioner has a duty to develop the record with updated opinions. This is not the Commissioner's burden. The ALJ is required to order further medical examination only if the medical records presented do not provide sufficient medical evidence to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The ALJ's formulation of plaintiff's RFC was based on sufficient medical evidence; the record merely requires further evidence from the VE. In that respect, the ALJ has a duty to further develop the record in the manner outlined below.

## VI. CONCLUSION

For the reasons set forth above, this court concludes the Commissioner's final decision that plaintiff was not disabled is not supported by substantial evidence on the record as a whole. Accordingly, the decision of the Commissioner of Social Security is reversed and remanded. The action is remanded to the Commissioner with directions for the ALJ to include specific limitations related to concentration, persistence, or pace in the hypothetical question posed to the VE. An appropriate Judgment Order is issued herewith.

S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 21, 2016.